**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **No. 3:15-cr-132-2 (VLB)** |
| **DEBORAH MILLER** | : | |
| **Defendant.** | : | **June 15, 2020** |

**ORDER GRANTING DEFENDANT DEBORAH MILLER'S MOTION FOR COMPASSIONATE RELEASE, DKT. 371**

**Before the Court is Defendant Deborah Miller's *pro se* Motion for Release from Custody, interpreted by the Court to seek re-sentencing for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling" reasons. See [Dkt. 371]. The Government consents to Ms. Miller's release, subject to her placement at a halfway house. [Dkt. 373 (Gov. Resp. Br.)]. For reasons that follow, the Court GRANTS Ms. Miller's motion for compassionate release and re-sentences her to a sentence of time served. An Amended Criminal Judgment will enter releasing Ms. Miller to a halfway house upon identification of a suitable placement by the Probation Office.**

**Background**

**On October 13, 2016, the Court sentenced Ms. Miller to 72 months of incarceration following Defendant's guilty plea to one count of Conspiracy to Distribute, and to Possess with Intent to Distribute, Cocaine Base, in violation of**

**21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C). Ms. Miller was one of five defendants arrested following an FBI investigation into an explosion in Hamden, Connecticut in July 2015 and the discovery of a human body. [Dkt. 151 (PSR) ¶¶ 12-29][1]. The victim was known to police to be involved in narcotics trafficking and connected with Christopher Miller, Ms. Miller's son. [PSR ¶¶ 17-30]. The subsequent investigation established that the victim was shot and killed by Christopher Miller in the basement of the two-family house that Ms. Miller shared with her son, his wife, and her grandchildren. [PSR ¶¶ 14-29].**

**Ms. Miller was not charged with the decedent's death, but rather the poly-substance narcotics trafficking conspiracy that she transferred to her son and that she continued to engage in with co-conspirators. [PSR ¶¶ 33-39]. Ms. Miller stipulated to a drug quantity of at least 1.6 kilograms of cocaine base, along with a smaller quantity of methamphetamine. [PSR ¶ 88]. The parties, the probation office, and the Court all agreed on the Defendant's guideline calculation: an adjusted offense level of 29 and a Criminal History Category of IV, rendering an advisory guideline sentence range of 121-151 months. [Dkt. 159 (10/13/2016, Sentencing hearing audio file) at 57:43-58-58]. Of note, the Government sought a below-guideline sentence on account of Ms. Miller's health conditions. [Dkt. 157 (Gov. Sent. Mem.) at 12]. Taking all of the 18 U.S.C. § 3553(a) sentencing factors into account, the Court sentenced Ms. Miller to, *inter alia*, a 72-month term of**

---

**[1] At sentencing, the Court confirmed that Defendant read the presentence report ("PSR"). Defendant did not have any objections to the facts as presented in the PSR and the Court adopted the PSR as its finding of fact. [Dkt. 159 (10/13/2016, Sentencing hearing audio file) at 0:44-2:22]**

**incarceration. [Dkt. 162 (Crim. J.)]. The Court departed from the advisory guideline range because Ms. Miller's age and medical conditions made recidivism less likely. [Dkt. 159 (10/13/2016, Sentencing hearing audio file) at 1:04:00-1:05:44]; [Dkt. 167 (Sealed Statement of Reasons)].**

**On or about May 23, 2020, the Court received a *pro se* motion from Ms. Miller seeking her release from custody. [Dkt. 371-1 (Def. Mot. for Red. Sent.) ]. Her motion states that in November 2016, she was transferred to FMC Carswell in Fort Worth, Texas. [*Id*. at 1]. The motion requests that the Court sentence Defendant to a term of time served, stating:**

> **I have bad lungs. I am on oxygen 24 hours per day. I receive monthly transfusions for my lungs and am living at the chronic care unit here at Carswell…According to the CDC, I am at a high risk to die if I catch the virus.**

**[*Id*. at 2].**

**Defendant's motion states that she has contacted her counselor, case manager, and "regions" and no one has responded, but it was unclear what relief she sought or the status or timing of any administrative requests. [*Ibid*.].**

**A review of the Bureau of Prison's ("BOP") Inmate Locator confirms that Ms. Miller was designated to FMC Carswell. *See Inmate Locator Service, BOP Registration no. 22940-014*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/. *See Vera v. United States*, No. 3:11-CV-00864-VAB, 2017 WL 3081666, at *3, n. 2 (D. Conn. July 19, 2017) (taking judicial notice of the inmate locator search). Her current release date is August 21, 2020. [*Ibid*.].**

**On May 26, 2020, the Court issued an order interpreting Defendant's *pro se* motion as seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and declining to consider any challenge to the BOP's calculation of her sentence for lack of jurisdiction. [Dkt. 371]. The Court ordered expedited briefing and that the Government address the status of any administrative requests for relief. [*Ibid*.].**

**In response, the Government agrees that Ms. Miller demonstrated "extraordinary compelling" reasons for reducing her sentence because she suffers from a myriad of significant pre-existing health conditions, she has served over 90% of her sentence, and she is no longer a danger to the community. [Dkt. 373 (Gov. Resp. Br.) at 2].**

**Ms. Miller's Medical Conditions**

**The PSR detailed Ms. Miller's progressively declining health and increasing frequency of hospitalization for complications from pneumonia while in custody. [PSR ¶ 76]. Prior to sentencing, she was diagnosed with Chronic Obstructive Pulmonary Disease (COPD), emphysema, asthma, arthritis in her shoulders, neck and hips, and frequent headaches. [*Ibid*.]. She was receiving monthly infusions of intravenous immune globulin due to her low white blood cell counts and was susceptible to infection. [*Ibid*.]. She was breathing with the assistance of an oxygen tank, even at rest; her difficulty doing so was audible. During sentencing, the Court took a fifteen-minute recess for Ms. Miller to recover from a breathing exacerbation. [Dkt. 159 (10/13/2016, Sentencing hearing audio file) at 37:53-38:30].**

**Pursuant to the Court's order, the Government filed Ms. Miller's recent sealed medical records from FMC Carswell. [Dkt. 375 (Sealed Med. R.)]. These records confirm that Ms. Miller continues to suffer from severe COPD requiring supplemental oxygen and requires infusion treatments for Common Variable Immunodeficiency. In their response brief, the Government observes that the medical records "make plain that she suffers from numerous health conditions that would make her more vulnerable to COVID-19." [Dkt. 373 (Gov. Resp. Br.) at 9]. The Court agrees.**

## Legal Standard

**"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed'; but the rule of finality is subject to a few narrow exceptions."** ***Freeman v. United States*****, 564 U.S. 522, 526 (2011) (citations omitted) (quoting 18 U.S.C. § 3582(c)). The statute providing for the finality of a criminal judgment contains a narrow exception to provide for re-sentencing for compassionate release. 18 U.S.C. § 3582(c)(1)(A).**

**Addressing the specific provision under which Defendant seeks release, the First Step Act of 2018 amended the procedural requirements for bringing a motion to reduce sentence to provide compassionate release. First Step Act of 2018, Section 603(b), Pub. L. 115-391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)). This amendment allows a defendant to move for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or**

**the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Previously, only the Bureau of Prisons ("BOP") could move for compassionate release and such motions were rarely filed. *See United States v. Rivernider*, No. 3:10-CR-222(RNC), 2020 WL 597393, at *2 (D. Conn. Feb. 7, 2020). The amendment expanded access to the courts but did not alter the substantive standard. *See Ibid*.; *see also United States v. Ebbers*, No. S402CR11443VEC, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).**

**To consider a sentence reduction for compassionate release, Defendant must show that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). By statute, such reduction must be consistent with applicable policy statements issued by the U.S. Sentencing Commission. § 3582(c)(1)(A). In addition to finding "extraordinary and compelling" reasons for the reduction, the Court must also find that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" per U.S.S.G. 1B1.13(2). Then, before compassionate release can be granted, the Court must consider the 18 U.S.C. § 3553(a) sentencing factors to the extent relevant. 18 U.S.C. § 3582(c)(1)(A).**

**At Congress's direction, the U.S. Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling" reasons. *See* 28 U.S.C. § 944(t). As this Court and other courts have recognized, the U.S. Sentencing Commission guidance has not yet been updated to reflect the liberalization of the procedural requirements. *United States v. Gagne*, No. 3:18-**

**CR-242 (VLB), 2020 WL 1640152, at *2 (D. Conn. Apr. 2, 2020); *Ebbers*, 2020 WL 91399, at *4. The Application Notes to U.S.S.G. § 1B1.13 explain that a defendant's medical condition may constitute "extraordinary and compelling" circumstances when:**

> **(A) Medical Condition of the Defendant.--**
> **(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.**
> **[or]**
> **(ii) The defendant is--**
> **(I) suffering from a serious physical or medical condition,**
> **(II) suffering from a serious functional or cognitive impairment, or**
> **(III) experiencing deteriorating physical or mental health because of the aging process,**
> **that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.**

**U.S.S.G. 1B1.13, Commentary Application Note 1(A). Commentary Application Note 1(D) contains a residual clause to provide relief for other "extraordinary and compelling reasons" as determined by the Director of the Bureau of Prisons. Each of the conditions listed in the application note are debilitating and render an inmate unlikely to recidivate. The Defendant bears the burden of showing that she is entitled to a sentence reduction. *Ebbers*, 2020 WL 91399, at *4.**

## Discussion

### I. Exhaustion of administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A)

**18 U.S.C. § 3582(c)(1)(A) requires that a defendant must first seek administrative relief, and then may proceed to court after fully exhausting**

**administrative appeals or the lapse of 30 days from the warden's receipt of the request, whichever is earlier. Here, Defendant satisfied the administrative exhaustion requirement.**

**Defendant's *pro se* motion vaguely references unanswered requests for administrative relief at various levels within the BOP. Records filed by the Government suggest that the BOP considered Ms. Miller for compassionate release in March of 2020 and determined that she was eligible for release but declined to seek re-sentencing because she had not secured an address. [Dkt. 373 (Gov. Resp. Br.) Ex. A, BOP Individualized Re-Entry Plan, 03/24/2020]("Inmate qualifies for FSA but has not secured an address for release. Inmate has a financial/poverty skills need.)(sic). At the time of Ms. Miller's filing, more than thirty days had passed since March 24, 2020, and the Court will rule on the merits of Ms. Miller's motion.**

**II. Whether Defendant has demonstrated "extraordinary and compelling reasons"**

**The Court recognizes that "extraordinary and compelling" circumstances may exist outside of those circumstances strictly delineated by the U.S. Sentencing Commission guidance, given the advisory nature of the guidelines, *United States v. Booker*, 543 U.S. 220 (2005), and their conflict with the statutory language of the First Step Act amendments. *See United States v. Anton Jepsen*, 3:19-cr-73, Dkt. 41 at 7-8, 2020 WL 1640232 (D.Conn. Apr. 1, 2020) (Bryant, J). The guidelines are nevertheless helpful in defining the vague standard because the**

**First Step Act did not amend the substantive standard. *Ebbers*, 2020 WL 91399, at *4.**

**This Court and others have recognized that an inmate's especially heightened risk of infection and risk of developing severe complications from COVID-19 based on their medical history may constitute "extraordinary and compelling" reasons to grant compassionate release. *See, e.g. Jepsen*, 2020 WL 1640232, at *5 (granting motion for compassionate release where defendant suffers from a compromised immune system); *United States v. Sanchez*, No. 18-CR-00140-VLB-11, 2020 WL 1933815, at *5 (D. Conn. Apr. 22, 2020) (same); *see also, Martinez-Brooks v. Easter*, No. 3:20-CV-00569 (MPS), 2020 WL 2405350, at *13 (D. Conn. May 12, 2020) ("...approximately 25 out of 48 COVID-19 related motions for compassionate release have been granted in this District alone since the crisis began."); *but see United States v. Gamble*, No. 3:18-CR-0022-4(VLB), 2020 WL 1955338, at *4 (D. Conn. Apr. 23, 2020) (denying compassionate release because, *inter alia*, defendant's diabetes was controlled and defendant remained dangerous); *see also United States v. Spruill*, No. 3:18-CR-0022-10(VLB), 2020 WL 2113621, at *5 (D. Conn. May 4, 2020)(denying compassionate release where "[defendant] is young and healthy; his is the antithesis of the profile of a person at heightened risk of complications or death due to contracting COVID-19.").**

**A motion for compassionate release is not an appropriate safety valve to ameliorate the immediate risk to inmates' health and safety posed by the pandemic. Congress empowered the BOP with the ability to expand the use of home confinement pursuant to 18 U.S.C. § 3624(c)(2). CARES Act, Pub. L. No.**

**116-136 (2020). The BOP is also empowered to grant temporary furloughs. 18 U.S.C. § 3622. In contrast, if granted by the sentencing court, a motion for compassionate release results in a new judgment, with a now-reduced stated term of incarceration. *See, e.g. Jepsen*, 3:19-cr-00073-VLB-1, Dkt. 42 (Am. Crim. J. following order granting unopposed motion for compassionate release). The defendant will not return to BOP custody absent an intervening conviction. This degree of permanency is reflected in the rigorous criteria set forth by the U.S. Sentencing Commission's guidance, contemplating terminal illness and debilitation to the point where self-care can no longer be performed in a custodial setting. U.S.S.G. § 1B1.13. Here, Ms. Miller satisfies her burden of establishing "extraordinary and compelling" reasons to modify her sentence, given the permanency of her serious medical conditions and heightened risk of lethal complications if she contracts the virus, coupled with the minimal time remaining for her to serve on her sentence.**

**First, the U.S. Centers for Disease Control and Prevention identified chronic lung disease, such as COPD and emphysema, as risk factors for severe complications from COVID-19, particularly if not well controlled. *See People who are at higher risk for severe illness*, Ctrs. for Disease Control and Prevention, [https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html](https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html) (last reviewed by the CDC on May 14, 2020). A recent article published in the peer-reviewed journal Respiratory Medicine found that COPD was associated with a five-fold increased risk of severe illness from COVID-19 based on a meta-analysis of Chinese and Singaporean studies. Giuseppe Lippi**

**and Brandon Michael Henry, *Chronic obstructive pulmonary disease is associated with severe coronavirus disease 2019* (COVID-19), Respiratory Med., (Mar. 24, 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7154502/. COPD is a progressive disease, meaning that it gets worse over time. *See Deso v. Astrue*, No. 2:10-CV-223, 2011 WL 5967181, at *3, n. 2 (D. Vt. Nov. 29, 2011)(citations omitted).**

**Apart from her pulmonary diseases, Ms. Miller also suffers from a serious immunological disorder, with a history of acute respiratory infections. [PSR ¶ 76]; [Dkt. 375 (Sealed Med. R.)]; *see also Common Variable Immunodeficiency (CVID),* Nat. Inst. of Allergy and Infectious Disease, https://www.niaid.nih.gov/diseases-conditions/common-variable-immunodeficiency-cvid (last visited June 11, 2020)("People with CVID may experience frequent bacterial and viral infections of the upper airway, sinuses, and lungs. Acute lung infections can cause pneumonia, and long-term lung infections may cause a chronic form of bronchitis known as bronchiectasis, which is characterized by thickened airway walls colonized by bacteria."). The Court readily finds that Ms. Miller is especially vulnerable to severe and potentially lethal complications if she contracts COVID-19. The Court finds that releasing Ms. Miller from custody would likely reduce her risk of exposure to the virus because it will increase her ability to engage in social distancing.**

**The Court also finds that the limited duration remaining on Defendant's sentence as an additional consideration favorable to granting her motion for compassionate release. Most of Defendant's sentence has already been served**

**and she has less than three months of incarceration remaining. In that regard, Defendant's case is analogous to *Jepsen*, 2020 WL 1640232, at *5, where Defendant had less than eight weeks left to serve on his nine-month sentence. In contrast, the Court has denied motions for compassionate release where all or most of the term of incarceration has yet to be served. *See, e.g. United States v. Callan*, No. 3:19-CR-140 (VLB), 2020 WL 1969432, at *1 (D. Conn. Apr. 24, 2020)(denying motion to amend a criminal judgment for compassionate release prior to defendant's report date); *United States v. Rivera*, No. 317CR001596VLB, 2020 WL 1909227, at *5 (D. Conn. Apr. 10, 2020)(less than half of a 60 month sentence was served); *Gagne*, 2020 WL 1640152, at *5 (less than 20% of 41 month sentence was served).**

**Accordingly, the Court finds that the combination of Ms. Miller's severely diminished health, demonstrated vulnerability to COVID-19, and the limited duration of her custodial sentence left to serve, as establishing "extraordinary and compelling" reasons to re-sentence her to time served.**

**III. Whether Defendant poses a danger to the community**

**As discussed *supra*, before granting a motion for compassionate release, the sentencing court must consider *inter alia*, the history and characteristics of the person, including:**

> **(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;**

**18 U.S.C. § 3142(g)(3)(A).**

**This inquiry considers the Defendant's circumstances during the interim period between the proposed amended sentence and her existing release date. *United States v. Hill*, No. 3:19-CR-00038 (JAM), 2020 WL 2542725, at *3 (D. Conn. May 19, 2020). The Defendant has a long history of drug addiction and offenses, culminating in prior bouts of homelessness and her eventual conviction for a serious federal narcotics offense. [PSR ¶¶ 71, 77-80]. The Defendant's motion does not set forth her discharge plan, which concerns the Court. However, Ms. Miller's health is deteriorated to such an extent that recidivism is unlikely. Ms. Miller has two other children, other than Christopher, and long-standing ties to the New Haven area. [PSR ¶¶ 74-75]. She was receiving Social Security benefits prior to her incarceration. [PSR ¶ 71]. Ms. Miller will benefit from the immediate assistance and supervision of the Probation Office during her five-year term of supervised release. The Court understands that the Probation Office is currently searching for temporary housing for Ms. Miller upon her release from BOP custody.**

**IV. <u>Consideration of the 18 U.S.C. § 3553(a) sentencing factors</u>**

**Finally, the Court concludes that reducing Ms. Miller's sentence comports with the statutory factors considered at sentencing. As discussed above, Ms. Miller was convicted of a serious drug trafficking offense. She has served virtually the entire custodial sentence with only 5% of her sentence remaining. In light of that, and considering her vulnerable health status, a sentence of time served would still promote respect for the law and reflect the seriousness of her offense. The Court also finds that recidivism is unlikely as Defendant's precarious health**

**conditions and her risk of infection during the pandemic limit her mobility and constrict her ability to safely interact with others.**

## **Conclusion**

**For the aforementioned reasons, the Court GRANTS Defendant's motion for compassionate release.**

**The Court remains concerned that discharging Ms. Miller without a discharge plan in place will result in her homelessness, which would be more precarious to her health than remaining at FMC Carswell for a short duration, especially given her need for intensive medical care. Except for one poignant case, FMC Carswell has been minimally affected by the virus, reporting no other infections among inmates or staff. *See BOP COVID-19 Cases (Table)*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp, (last updated 06/11/2020); *Press Release, Fed. Bureau of Prisons*, Inmate Death at FMC Carswell (Apr. 28, 2020), https://www.bop.gov/resources/news_stories.jsp. As such, an amended judgment will enter upon notification of bed availability at a half-way house or when a suitable residential placement is located. The Probation Office is currently searching for an available halfway house. The Court expects the BOP to immediately commence the discharge process and begin planning for Ms. Miller's safe return to this District. In the event that a bed or a suitable residential placement is not identified, the Court will hold a status conference within ten (10) days.**

**Finally, the duration and terms of supervised release are unaffected by this Order. Defendant should note that the leniency shown by the Court at sentencing**

**and again in consideration of her motion for compassionate release is unlikely if she betrays the Court's trust by violating the terms of supervised release.**

**IT IS SO ORDERED**

**______/s/__________________**

**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: June 15, 2020**